| | |
|---|---|
| GERALD R. SAVIDGE, Trustee of the Phyllis W. Souders Trust U/A Dated 9/11/97, | Civil No. 16-8705 (NLH/JS) |
| | **OPINION** |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

**APPEARANCES:**

STEVEN J. JOZWIAK
523 HOLLYWOOD AVE.
SUITE 206
CHERRY HILL, NJ 08002

*Attorney for Plaintiff Gerald R. Savidge, Trustee Phyllis R. Souders Trust U/A Dated 9/11/97*

NISHANT KUMAR
U.S. DEPARTMENT OF JUSTICE
TAX DIVISION
555 4TH STREET NW
ROOM 6833
WASHINGTON, DC 20001

*Attorney for Defendant United States of America*

**HILLMAN, District Judge**

The instant matter is a refund suit brought by a taxpayer against the United States of America. Presently before the Court are cross-motions for summary judgment, which have both been fully briefed. For the reasons expressed below,

Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied.

## BACKGROUND

This Court takes its recitation of facts from Plaintiff's and Defendant's Local Civil Rule 56.1 statements. This Court will note any dispute where applicable. Phyllis W. Souders[1] brought an action in the 1990s against the South Carolina Public Service Commission (d/b/a Santee Cooper) in the United States District Court for the District of South Carolina (the "<u>Santee Cooper</u> Litigation"). Phyllis Souders sued for damages suffered to her property (the "Property") as a result of severe flooding caused by Santee Cooper's work on a nearby hydroelectric project.

After many years of litigation, United States District Judge Patrick Michael Duffy held a binding mediation hearing from November 18 to November 21, 2008. As a result, the South Carolina District Court ordered judgment entered against Santee Cooper and in favor of Phyllis Souders "in the amount of $304,750.00, plus 8% interest from the date of flooding to the date of this Order, and $40,000.00 on the trespass cause of action." The interest totaled $747,572.[2] By the time judgment

---

[1] Her surname is misspelled in the case caption as "Sauders."

[2] Plaintiff has attempted to characterize this award as a mediation or a settlement. The facts do not support this

2

was entered in 2009, Phyllis Souders was deceased.

The Estate of Phyllis Souders (the "Estate") received the above award. The Estate distributed $724,133 to the Phyllis W. Souders Trust U/A Dated 9/11/97 (the "Trust"), which was the sole beneficiary of the Estate. Plaintiff, Gerald R. Savidge, is both the Executor of the Estate and the Trustee of the Trust. The tax treatment of this interest is where the dispute between the parties lies.

For the tax year ending January 31, 2010, the Estate submitted an income tax return reporting $747,572 of "interest income" – described as "Santee Cooper – Interest on Litigation" – and, after deducting administrative expenses, reported distributing the remaining $724,133 to the Trust. The Estate also passed a $409,919 excess deduction to the Trust. Since the South Carolina District Court awarded $344,750 for damages and trespass to the Property at issue, there was a "net capital loss" to the Estate's basis in the Property in the previously mentioned excess deduction amount. After reporting the interest income and capital loss, the Trust reported owing $107,778 in

---

characterization, as the parties submitted to binding mediation and Judge Duffy entered an order. While the parties may have voluntarily entered into the binding mediation proceedings, Plaintiff presents no facts suggesting that the Order merely evidences a voluntary settlement. In fact, the binding nature of the mediation suggests the amount awarded by Judge Duffy was involuntarily given.

3

taxes and paid that amount to the United States.

In May 2013, the Estate submitted an amended return for the above-described tax year.  This return omitted both the interest income and "long-term capital loss" that was reported in the previous return and stemmed from the Santee Cooper Litigation. The Trust treated the interest income and long-term capital loss in the same way, and did not include either on the amended return.  Both the Trust and the Estate provided the below explanation for the amended filing:

> The reported interest income was received from the S.C. Public Service Commission.  It was reported as taxable interest instead of federal and S.C. tax free municipal interest.
>
> The award for property damage has been removed from the Schedule D since it reflects only a return of basis on property still owned by the Estate and was inappropriately included in the original filing.
>
> The adjustments to this return relates to these charges.

After submittal of the amended returns, the accountant who prepared them for both entities followed up in December 2013 requesting "written verification of the status of the return." The Internal Revenue Service ("IRS") sent a letter to the Estate in response.  The letter was in regard to the tax period "Aug. 31, 2009" and stated: "Thank you for your inquiry of December 5 2013.  We corrected your account based on the information you

provided."[3]  No further action was taken by the IRS.  No refund was issued.

Plaintiff filed his complaint against the United States on November 22, 2016.  Defendant, after withdrawing a motion to dismiss, filed an answer on July 7, 2017.  Discovery ensued.  Cross-motions for summary judgment were filed by the parties on March 15, 2018.  Both have been fully briefed and are ripe for adjudication.

## **ANALYSIS**

**A.    Subject Matter Jurisdiction**

This Court has jurisdiction under 28 U.S.C. § 1346(a)(1) as this is a civil action brought against the United States for "the recovery of . . . internal-revenue tax alleged to have been erroneously or illegally assessed or collected . . . ."

**B.    Standard on Motion for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

---

[3] What this ambiguous statement from the IRS means is unclear. The only record evidence that either party has pointed to – the deposition testimony of the Trust's accountant - suggests that this statement from the IRS merely meant that it had received the amended return.  Plaintiff offers no support for its bald assertion that the IRS had decided the amended return required it to refund the previously paid tax.  The fact that the United States vigorously contents Plaintiff's claims suggests otherwise.

5

affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing F%%ED%%. R. C%%IV%%. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

**C. Defendant's Motion for Summary Judgment**

This Court will first address Defendant's Motion for Summary Judgment. This motion presents two arguments.[4] First, Defendant argues its defenses are not time-barred. Second, Defendant argues the interest income was properly taxed in the first return. This Court will address each argument in turn.

a. Statute of Limitations

Plaintiff's central argument throughout the course of this litigation asserts that in cases where an amended return reducing a tax liability is filed, once the statute of limitations has expired under 26 U.S.C. § 6501, the IRS must accept the amended return and forfeit the tax previously paid if it has taken no action. Plaintiff continues to rely on this argument at the summary judgment stage. In relevant part, 26 U.S.C. § 6501(a) states: "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed."

In response, Defendant argues that the IRS is not time-barred from disputing the accuracy of an amended return under 26 U.S.C. § 6501. It cites Lewis v. Reynolds and its progeny,

---

[4] Defendant also argues that any additional bases for refund not disclosed in the complaint cannot be argued on a motion for summary judgment. This Court will not address this third argument, as Plaintiff does not raise additional arguments and because the decision on Defendant's first two arguments further moots this third argument.

8

which together stand for the proposition that, even though "the statute of limitations may have barred the assessment and collection of any additional sum, it does not obliterate the right of the United States to retain payments already received when they do not exceed the amount which might have been properly assessed and demanded." 284 U.S. 281, 283 (1932). See also Morristown Trust Co. v. Manning, 104 F. Supp. 621, 628 (D.N.J. 1951) ("[I]n acting upon a claim for refund . . . the Commissioner has authority to reaudit the return and to reject the claim if the redetermaination does not show an overall overpayment even though the statute of limitations prevents him from making an additional assessment for the year involved.").

Plaintiff's argument contradicts the clear terms of the statute and decades of precedent. Although 26 U.S.C. § 6501(a) prohibits the IRS from assessing additional taxes after more than three years have elapsed from the filing of a return, it is silent on a statute of limitations for refund actions. Here, that tax was assessed and collected within three years. Defendant is not assessing any more tax for the tax year at issue, but merely refuses to refund that which was already paid.

The Third Circuit previously rejected a claim similar to Plaintiff's claim, saying "section 6501(a) directs only that taxes 'be assessed within 3 years after the return was filed.' . . . A deficiency determination, by which the IRS seeks to

9

establish the taxpayer's additional tax liability, is patently different from a refund determination, by which the taxpayer seeks repayment or credit from the IRS." <u>Bachner v. Commissioner</u>, 81 F.3d 1274, 1277 (3d Cir. 1996) (emphasis in original). As highlighted above, the case law[5] supports Defendant's position that 26 U.S.C. § 6501, even if applicable, does not bar the United States from resisting a refund claim. Thus, this Court rejects Plaintiff's central argument.

Plaintiff argues, in the alternative, that even if this Court is not barred from determining the tax liability of a taxpayer who is a party to the action, this Court is barred from determining the tax liability of a taxpayer who is a non-party. Defendant argues in its reply brief that a determination of a non-party's, here the Estate's, tax liability is not required. Instead, it asserts, the Court need only look so far as the

---

[5] In his reply brief, Plaintiff argues the case law cited by Defendant is distinguishable. While the facts of Defendant's cases do differ from those presented here, Plaintiff does not address why the United States is barred from keeping Defendant's payment. The case law specifically addresses a situation where a taxpayer brings a refund suit after the statute of limitations for the government to assess additional tax has passed. In those situations, the government is only restricted from assessing more tax, not retaining the tax already paid – unless the taxpayer proves overpayment. The rule is logical, as it is the taxpayer who self-reports the tax owed. The government should not be restricted in litigation just because the taxpayer made a mistake and rested on its claim for a refund until after the government's assessment window under 26 U.S.C. § 6501(a) has elapsed.

10

Trust's tax liability to determine whether or not a refund is required.

Defendant is correct. Even though the Trust reported its tax liability in the same manner as the Estate, the Trust's return and amended return gives this Court enough information to determine this case. Plaintiff does not show this Court what information on the Estate's return is needed for it to make this decision. The Trust's amended tax return states the reason for amendment and the source of the interest income. Moreover, the case law shows no limitation – and Plaintiff offers nothing in rebuttal - that would prohibit this Court from examining the Estate's returns to determine the merits of this action. Even if this Court were required to look at the Estate's returns to gather enough facts to decide the merits of this case, there is no bar.[6]

This Court determines the merits of the refund claim brought by the Trust. To the extent its decision may affect the return filed by the Estate is of no moment. It is the Executor of the Estate who must determine whether any legal obligation arises to amend the return after entry of an order effectuating

---

[6] In fact, both Trust returns may be seen to incorporate by reference the Estate returns. So, it seems, the Trust has put the Estate's return at issue in this case. It cannot now complain if the Court examines the Estate's return in analyzing the arguments of the parties.

this Opinion.

      b. <u>Tax Implications of Interest Income Received by the Trust</u>

Now that this Court has determined there is no statute of limitations issue it may decide the merits of this case. Defendants insist that no refund is appropriate. The United States argues this type of interest income is not tax-exempt and it was correctly taxed.

Plaintiff does not argue the merits of whether the interest income is tax exempt or taxable. Instead, Plaintiff argues there are questions of material fact remaining to be decided. First, Plaintiff argues there is a question of material fact as to whether the interest income was pursuant to a court order or settlement or mediation. Second, Plaintiff argues there is a question of material fact as to whether the statute of limitations bars the United States from resisting refund.

Before discussing the merits of Defendant's argument, this Court will dispose of Plaintiff's two arguments. The interest income was granted pursuant to court order. Although the hearing that Judge Duffy held was a "binding mediation," he ordered the interest income. This was not a voluntary settlement pursuant to party negotiations or mediation. Plaintiff does not bring forth any documents that would suggest

otherwise.[7]  Plaintiff's second argument is not a dispute of fact, but a dispute of law.  As explained supra, the statute of limitations is inapplicable to this action.

Even though Plaintiff has not presented argument rebutting Defendant's argument on the merits, Defendant must still meet the standard for summary judgment.  See Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."). As explained infra, Defendant has met this standard.

The material facts are not in dispute.  The Santee Cooper Litigation ended via binding mediation.  At the conclusion of that mediation, the Court ordered Santee Cooper to pay interest on the judgment.  The interest stems not from a governmental bond or voluntary borrowing agreement, but because Santee Cooper had been involuntarily found liable for a wrong and a federal judge determined that interest must be paid to fully right the wrong.

---

[7] The docket Plaintiff attaches to its filings only reinforces this finding.  Moreover, the discussion infra will show Plaintiff's distinction is unsupported by the case law.

"The ultimate question presented for decision, upon a claim of refund, is whether the taxpayer has overpaid his tax." Lewis, 284 U.S. at 283. In a tax refund suit, "the plaintiff bears the burden of proving that it has overpaid its taxes for the year in question in the exact amount of the refund sought." Wells Fargo & Co. & Subsidiaries v. United States, 91 Fed. Cl. 35, 75 (2010) (citing Helvering v. Taylor, 293 U.S. 507, 515 (1935); Lewis, 284 U.S. 281; Dysart v. United States, 169 Ct. Cl. 276 (1965)). The Court conducts this review de novo. Id. See also R.E. Dietz Corp. v. United States, 939 F.2d 1, 4 (2d Cir. 1991) ("[T]he court does not sit in judgment of the Commissioner; the court places itself in the shoes of the Commissioner.").

The IRC section at issue is 26 U.S.C. § 103. Generally, Section 103 exempts from taxation interest on state and local bonds, which are defined as "an obligation of a State or political subdivision thereof." Generally, tax exemptions "should be construed narrowly." DeNaples v. Commissioner, 674 F.3d 172, 176 (3d Cir. 2012) (In re Hechinger Inv. Co. of Del., Inc., 335 F.3d 243, 259 (3d Cir. 2003)).

Case law interpreting this section has explicitly excluded interest that is not incurred via the borrowing power of the states. Helvering v. Stockholms Enskilda Bank, 239 U.S. 84, 86-87 (1934). The test in the Third Circuit hinges on whether the

14

"interest obligation arose by operation of law or by voluntary bargaining." DeNaples, 674 F.3d at 177. In other words, "when the state pays interest at a fixed rate pursuant to a statutory or judicial command, it is plainly not excludable under Section 103 . . . ." Id.[8] Although the interest payment was pursuant to mediation, it was a binding mediation and the judgment was entered via court order. The interest income does not qualify for this tax exemption. Plaintiff is not entitled to a refund. Thus, Defendant's Motion for Summary Judgment will be granted and Plaintiff's sole claim in this case will be dismissed.

    c. Plaintiff's Other Statutory Arguments

Within his briefing on these cross-motions, Plaintiff presents two additional arguments that this Court must address. First, Plaintiff argues under 26 U.S.C. § 6034A(c)(1) he was required to report the Trust's return in the same manner as the Estate's return. This is a red herring. Plaintiff is both Executor and Trustee, so he had the ability – and obligation – to approve both the Estate's and the Trust's returns and amended returns. Unlike his analogy to a third-party company providing a shareholder with a 1099-DIV, it appears the Estate and Trust

---

[8] As case law from the other Circuits (and the Supreme Court) explains, the policy behind Section 103 "is to encourage loans in aid of governmental borrowing power." Drew v. United States, 551 F.2d 85, 87 (5th Cir. 1977). Clearly, the interest imposed was not to encourage a loan, but to right a wrong committed by the state.

15

were separate in name only.  All the assets of the Estate went to the Trust, and Plaintiff was a fiduciary to both.

Regardless, Plaintiff is not being accused of tax fraud, but being refused a refund.  What the Trust reported on its amended return, and whether it matches the Estate's amended return is an ancillary issue.  The Trust reported it owed taxes; then the Trust reported it did not owe taxes.  This Court determines it did owe taxes.  No further analysis of this statutory provision is necessary.

Second, Plaintiff argues another red herring under 26 U.S.C. § 7491(a).  The statute here states the burden shifts to the United States after "a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B . . . ."  26 U.S.C. § 7491(a).  Plaintiff has produced no credible evidence showing the Trust does not owe the tax it previously paid.  The burden has not shifted to the United States.  But, even if it did, the United States has shown with credible, publicly available evidence and the Trust's own tax returns that no refund should be given.

### D. Plaintiff's Motion for Summary Judgment

Because Plaintiff relies upon the same grounds he did in resisting Defendant's Motion for Summary Judgment in his own Motion for Summary Judgment, this Court will not engage in a

16

separate analysis.  For the reasons discussed supra, this Court will deny Plaintiff's Motion for Summary Judgment.

## **CONCLUSION**

For the reasons set forth in this Opinion, this Court will grant the Defendant's Motion for Summary Judgment and deny the Plaintiff's Motion for Summary Judgment.

An appropriate Order will be entered.


Date: October 31, 2018         s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.